UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No.: 22-cr-20630

NOPPHADON NINSAWAT,              Hon. David M. Lawson

        Defendant.

_____/

### DEFENDANT NINSAWAT'S
### MOTION TO DISMISS INDICTMENT

Defendant NOPPHADON NINSAWAT, by counsel, Jonathan M. Epstein, moves to dismiss the Indictment pursuant to U.S. Const. Art. 1, Section 8, Clause 3 for lack of an interstate nexus, and in support states:

    1.     NOPPHADON NINSAWAT is charged by Indictment with eight counts relative to online coercion and enticement of a minor using a facility and means of interstate commerce. 18 U.S.C. §2422(b), et al.

    2.     The Commerce Clause "delegates to Congress the power '[t]o regulate Commerce with foreign Nations, and among the several States…" U.S. Const. Art. 1, Section 8, Clause 3.

    3.     In this case, both parties to private communications, MV-1 and Mr. Ninsawat, live within the State of Michigan and all communications were intrastate occurring within the State of Michigan.

    4.     That all communications were through Instagram private messaging or "IM" (instant message), and as the parties were in "vanishing" or "disappearing" mode such that no

1

images exist.

5. That an "IM", "DM" (direct message) or "PM" (private message) are private modes of communication between social media users on platforms such as Facebook, Instagram, and Twitter.

6. The parties in this case were not using, posting or sharing images on "the internet," and these private communications had "nothing to do with 'commerce' or any sort of economic enterprise." *United States v. Lopez*, 514 U.S. 549, 552 (1995).

7. Mr. Ninsawat further has a First Amendment free speech right to private communications on the internet. *Reno v. A.C.L.U.*, 521 U.S. 844 (1997).

8. As no images ever existed "online" or on "the internet", no visual depictions were "transported in and affecting interstate and foreign commerce."

9. That private communications between Michigan residents do not constitute "commerce …among the several states…." and thus there is no interstate commerce nexus.

10. The Assistant United States Attorney does not concur in the relief requested.

WHEREFORE Mr. Ninsawat requests that this Court enter an Order to dismiss the Indictment for lack of an interstate commerce nexus.

Respectfully submitted,

Jonathan M. Epstein
Attorney for Defendant
30445 Northwestern Hwy,
Ste.225
Farmington Hills, MI 48334
Phone: 248-219-4004
jonathan@jonathanmepstein.com

Dated: January 20, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                   Case No.: 22-cr-20630

NOPPHADON NINSAWAT,         Hon. David M. Lawson

        Defendant.
_____/

**MEMORANDUM IN SUPPORT
OF MOTION TO DIMISS INDICTMENT**

**I. Statement of Facts**

On June 23, 22022, the Gibraltar Police Department received a complaint from the mother of a minor victim (MV-1) regarding the sexual exploitation of a child. (Complaint, para. 4). On information and belief, MV-1 resides in the vicinity of the City of Gibraltar, Michigan.

The matter began as a state investigation but was referred to the Department of Homeland Security Investigations (HSI) from the Gibraltar Police, and HSI received the content of the Instagram messages exchanged between MV-1 and Mr. Ninsawat. *Id.* at para. 8. That these messages were clearly private conversations between two Michigan residents and were not on the public "internet" for anyone else to see nor were images kept or shared as they "vanished" immediately upon receipt.

**II. Law and Argument**

The Commerce Clause "delegates to Congress the power '[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.'" *United States v. Lopez*, 514 U.S. 549, 552 (1995) (*quoting* U.S. Const. art. I, § 8, cl. 3). The Commerce Clause "contemplates congressional efforts 'to keep the channels of interstate commerce free from immoral and injurious uses.'" *United States v. Small*, 988 F.3d 241, 252 (6th Cir. 2021) (quoting *Heart of*

3

*Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964)).

The Commerce Clause empowers Congress to regulate *some* activities that occur entirely intrastate, *See United States v. Morrison*, 529 U.S. 598, 609 (2000), however even under the Supreme Court's "modern, expansive interpretation of the Commerce Clause, Congress' regulatory authority is not without effective bounds." *Id.* at 608 (citing Lopez, 514 U.S. at 557)

> the scope of the interstate commerce power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.

*Lopez*, 514 U.S. at 557 (quotation and citations omitted); see also *United States v. Windham*, 53 F.4th 1006, (6th Cir. 2022).

In *Lopez*, the Court struck down 18 U.S.C. 922(q) which criminalized possession of a firearm in a local school zone as exceeding Congress' authority. The Court noted that that section was "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." Id. at 561. Likewise, in *Morrison*, the Court struck down the civil remedy provision of the Violence Against Woman's Act, 42 U.S.C. 13981 holding that "in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor. 120 S.Ct at 1750. Accordingly:

> With those limitations in mind, modern Commerce Clause jurisprudence has identified three broad categories of activity that Congress may regulate under its commerce power .... First, Congress may regulate the use of the channels of interstate commerce .... Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities .... Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce ....*Morrison*, 529 U.S. at 609 (quotations and citations omitted).

Thus, Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617, 120 S. Ct. 1740. That is because

4

"[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id.* at 618. And lastly, the Supreme Court has extended the First Amendment's free speech protections to the medium of the internet. *Reno v. A.C.L.U.*, 521 U.S. 844 (1997).

In the instant case, the activity that is the subject of the Indictment is clearly "non-economic" private personal internet conversation and communications. The discussions had "nothing to do with 'commerce' or any sort of economic enterprise." *Lopez, supra*. And there was zero "economic endeavor" here. *Morrison, supra*. No images were transmitted that could potentially be used, published, or shared on the internet as all such messages "vanished" or "disappeared" upon receipt. Thus, unlike other federal "child pornography" cases, where the federal government rightly regulates and prosecutes online commercial activities involving child pornography, this is not such a case.

This case does not involve the commercial enterprise involving the manufacture and distribution of child pornography over the internet. Here, two Michigan residents were communicating privately, not publicly over the "internet." Nor were images ever "possessed" or shared online or on the "internet" for any purpose. Indeed, it would have been impossible for such images to be used or "shared" online for any economic purpose or activity as they were "disappearing" messages and vanish upon viewing. The facts of this case are that no images have been found or recovered notwithstanding the execution of several search warrants because no images exist.

Thus, the unique circumstances of the instant case, which all occur intrastate, are easily distinguishable from the general "garden variety" CP cases as images were not possessed, sent nor shared over the public internet or over a website. There is no economic component here as images were not and could not be transmitted or shared in interstate or foreign commerce. The private messages in this case "ha[ve] nothing to do with 'commerce' or any sort of economic enterprise."

*Lopez, supra.*

As alleged images were transmitted in "vanishing mode" and disappeared upon view and all communications between Michigan residents, no "substantial relation" to interstate commerce is shown. *Morrison, supra.* While the Instagram platform is on the internet, Congress still may not regulate strictly "noneconomic" private communication occurring within a State as that exact conduct is prohibited and is within the province of the State of Michigan which regulates and punishes criminal sexual conduct and online solicitation involving minors. *See* MCL 750.145d.

### III. Conclusion

For these reasons, the Indictment should be dismissed for lack of an interstate nexus.

Respectfully submitted,

_____
Jonathan M. Epstein
Attorney for Defendant
30445 Northwestern Hwy, Ste 225
Farmington Hills, MI 48334
Phone: 248-219-4004
jonathan@jonathanmepstein.com

Dated: January 20, 2023