UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                       Case No.: 22-cr-20630

NOPPHADON NINSAWAT,                Hon. David M. Lawson

    Defendant.
_____/

## NINSAWAT'S SUPPLEMENTAL BRIEF REGARDING APPLICATION OF THE COMMERCE CLAUSE

In June 2022, MV-1, a Michigan resident met Mr. Ninsawat "at her first job" in Michigan. (Gibraltar Police, 7/14/22 Forensic Interview Report). MV-1 states she began messaging Ninsawat on Snap-Chat wherein she represented herself as 18 years old. They messaged "every day for two weeks" sending explicit messages. *Id.* MV-1's mother reported this to local police. Notwithstanding a four-month investigation, no images were found as no images were physically or digitally created and do not exist.

Mr. Ninsawat's Commerce Clause challenge is not foreclosed by *United States v. Bowers*, 594 F.3rd 522 (6th Cir. 2010) where defendant manufactured and possessed a photo album of child pornography. Upon execution of a warrant, the FBI found additional sexual images of young girls taken by defendant. The Sixth Circuit rejected Bowers' claim he possessed the photos for noncommercial reasons and thus the activity was wholly intrastate. The Court relied on *Gonzales v. Raich*, 545 U.S. 1 (2005) (private intrastate cultivation of marijuana). In *Raich,* the Court held if a "general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence." *Id.* at 17.

*Bowers* held as to the defendant's activities "even wholly intrastate production and

1

possession involving a particular individual **could be diverted to the interstate market** because of the high demand for child pornography on that market." (Emphasis added). *Id.,* citing *Raich*, 545 U.S. at 22. Thus, Congress may regulate intrastate manufacture and possession of CP regardless of whether it was made for commercial purposes so long as, in the aggregate, such activity could undermine Congress's ability to regulate the larger commercial activity. *Id*.

The instant case is different; unlike *Bowers*, Ninsawat never created, manufactured nor possessed any physical or digital images that could ever be transmitted or diverted into the interstate market; that would be an impossibility. Here, the parties specifically used Instagram's "disappearing message" technology which automatically and permanently deletes images upon viewing and thus no digital image is created. As a result, neither party could have "shared" such images in any fashion (unless screenshotted). In other words, Mr. Ninsawat (perhaps unknowingly) was **following federal law** by electing a transmission technology that would **not create a digital image** that could eventually "work its way into the interstate market." Unlike *Bowers*, factually the opposite was done here.

While the Government argues Ninsawat stated he "screen shotted" some temporary images (Brief at 7), not in the relevant Instagram discussions; this "chat" was in reference to uncharged Snap Chat messaging when MV-1 was believed to be an 18-year-old woman. As to the charged Instagram message dates, Mr. Ninsawat **did not** screenshot, photograph or save any images; had he done so, an alert would be located on MV-1's cell phones and would have been saved in Ninsawat's photos or "deleted" image files. Had Ninsawat screenshot or "saved" any images of MV-1, Counsel would not be advancing a Commerce Clause challenge. What "could have" happened but did not is inconsequential.

To the contrary, the parties were being prudent and safe to **not create** any physical or digital image of MV-1 and thereby crudely were following the law or, at least, trying not

2

to not break the law. Disappearing message technology or features did not exist at the time of *Bowers* and thus the instant fact scenario is distinguishable and new. The fact that messages are permanently deleted and no "permanent record" or images were ever created, screenshot, saved nor exist in any fashion indicates this messaging activity between nearby Michigan residents could not have ever been "diverted" into the interstate market.

This case is more analogous to *United States v. Rife*, 33 F.4th 838, 841 (6th Cir. 2022), where an American citizen was charged with illicit sexual conduct involving a minor in a foreign place under 18 U.S.C. 2423(c). Rife argued Congress had no authority to regulate noncommercial acts in a foreign country under the power to "regulate Commerce with foreign Nations[.]" The Sixth Circuit agreed; first, while the Constitution authorizes Congress to regulate "[c]ommerce with foreign nations," the abuse was noncommercial and thus "not itself trade or commerce of any kind." *Id.* at 844. Second, the activity was not part of any transportation or traffic in foreign commerce. Thus, the molestation activity was beyond Congress's authority to regulate. Likewise, here the activity was wholly noncommercial and could not have potentially entered the interstate market.

Application of *Bowers* is further undermined by *Bond v. United States*, 572 U.S. 844 (2014). In *Bond*, a wife threw toxic federally regulated chemicals on her husband's car and mailbox. She was charged with violating the Chemical Weapons Act, 18 U.S.C. 229(a)(1). *Bond* held because our Constitutional structure leaves local criminal activity primarily to the states, the Court generally declines to read federal statutes as "intruding" on local responsibility unless Congress has clearly indicated otherwise. Because the Act contains no such "clear indication," it did not cover the local offense at issue; "the global need to prevent chemical warfare does not require the Federal Government to reach into the kitchen cupboard, or to treat a local assault with a chemical irritant as the deployment of a

3

chemical weapon." *Id.* at 2093.

*Bond* decided in 2014, notably rejected the reasoning employed by *Bowers* and *Raich*, 545 U.S. at 17, that "the *de minimus* character of individual [local] instances arising under that statute is of no consequence." In *Bond*, Justice Scalia's concurrence noted the chemical was "a toxic chemical" as defined in the Act and was possessed or used for an improper purpose. Even though the intrastate activity was clearly covered by the Act, *Bond* did not hold local use of the federally regulated chemical would "undermine it's larger regulatory scheme." *Bond* shows the Court shifting away from expansive New Deal era Commerce Clause analysis and instead more closely examining Congressional intent.

In this case, Congressional intent is clear; the fleeting exchange of permanently deleted images between two Michigan residents does not implicate the larger "billion-dollar child pornography industry." As stated in Reply, Congress indicated no "clear intent" to police local violations that do not create a visual depiction that could potentially be transmitted on the commercial child pornography market. Indeed, Congress indicated to the contrary. As in *Bond*, even if instantaneous images "technically" met the statutory definition in that moment, they are permanently deleted and thus do not implicate Congressional concerns and purposes clearly set forth in passage of the Act.

Thus, in *United States v. Nagarwala*, 17-cr-20274 (USDC EDM, ECF #370,11/20/2018), Judge Friedman carefully followed *Bond* in holding the Female Genital Mutilation (FGM) statute exceeded Commerce Clause authority as there is no rational basis to hold local FGM procedures had any effect, let alone a substantial effect, on interstate commerce. Likewise, here, deleted messages, which form the basis for State investigation and charges, have no effect on the world-wide child pornography industry as they do not exist and cannot be disseminated. Lastly, to transform purely local activity using smart phones (which nearly everyone uses) into a federal offense would federalize almost

4

all crime. This would certainly run afoul of *Bond* and the "well-established principle" that federal courts must be certain of Congressional intent before finding that federal law overrides the "usual constitutional balance of federal and state powers." *Bond* at 2089, citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) quoting *Atascadero v. Scanlon*, 473 U.S. 234, 243 (1985).

Here, Congressional intent, as set forth in Defendant's Reply at p.2, was focused on a particular "multibillion dollar industry." And Congress focused on the "**permanent** record of a child's abuse and the distribution of child pornography images" (Factor 3). Here, permanently deleted messages do not implicate this larger purpose sufficient to override State statute that regulates and polices "computer offenses" involving the distribution of sexually explicit material to a minor. See MCL 750.145b(1)(a). As in *Bond*, contemporary Supreme Court precedent and the Tenth Amendment do not allow for expanded federal police power beyond its clearly stated Congressional purpose.

For these reasons, and on these particular facts, this Honorable Court should grant Defendant's Motion to Dismiss the indictment.

Respectfully submitted,

*/s/ Jonathan M. Epstein*
Jonathan M. Epstein
30445 Northwestern Hwy,
Ste 225
Farmington Hills, MI 48334
Phone: 248-219-4004
jonathan@jonathanmepstein.com

Dated: April 18, 2023