UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                             Case No.: 22-cr-20630

NOPPHADON NINSAWAT,                    Hon. David M. Lawson

Defendant.

_____/

## DEFENDANT NINSAWAT'S
## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant NOPPHADON NINSAWAT, by counsel, Jonathan M. Epstein, and Christopher J. Coyle, pursuant to F. R. Crim. P. 29(a), moves for Judgment of Acquittal, for reason the evidence is insufficient to sustain a conviction, and in support states:

1.     NOPPHADON NINSAWAT is charged by Indictment with eight counts of sexual exploitation, 18 U.S.C. §2251(a), coercion and enticement, 18 U.S.C. 2422(b), and receipt, 18 U.S.C. 2252(A)(a)(2).

2.     Indictment, counts 1, 4 and 6 require the Government prove Ninsawat did "employ, use, persuade, induce, entice and coerce" MV to engage in sexual activity to produce a visual depiction.

1

3.      Indictment, count 2, 5 and 7 require the Government prove Ninsawat did "persuade, induce, entice and coerce" MV to engage in sexual activity for which he could be charged.

4.      Counts 3 and 8 require the Government prove Ninsawat "knowingly received material that contained [a visual depiction of] child pornography."

5.      Viewing the evidence most favorable to the Government, MV1 sought out and initiated contacts with Defendant, was predisposed and already engaged in such conduct, initiated or directed Defendant and thus no employment, use, persuasion, inducement, enticement, or coercion was employed nor necessary.

6.      The evidence shows Defendant "asked" for images; however, as a matter of law, an adult communicating with a minor "asking" for such material is not proscribed by the child exploitation statutes in which Congress has required a coercion or persuasion.

7.      Further, the Government has not provided a "visual depiction" thus while MV1 testified she sent illicit images of herself, whether the "disappearing messages" are what she purports them to be is not shown, that it constitutes child pornography nor has the illicit

2

nature has not been shown.

8.    As "messages" immediately "vanished," Defendant cannot have "known" nor "had reason to have reason to know" they would ever be "transported in...interstate or foreign commerce," (as that would be an impossibility), an element of the charged offenses.

9.    That Meta Platforms, Inc. Tyler Harmon testified Meta employs servers throughout the country and did not testify the transmissions between Michigan residents would necessarily have traveled between the states.

10.    The Assistant United States Attorney does not concur.

WHEREFORE, Defendant Ninsawat requests that this Honorable Court grant this motion under F. R. Crim. P. 29(a) and enter an Order dismissing all counts of the Indictment.

Respectfully submitted,

Jonathan M. Epstein
Christopher J. Coyle
Attorneys for Defendant
30445 Northwestern
Hwy, Ste.225
Farmington Hills,
MI 48334

Phone: 248-219-4004
jonathan@jonathanmepstein.com


Dated: November 27, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Case No.: 22-cr-20630

NOPPHADON NINSAWAT,                      Hon. David M. Lawson

Defendant.

_____/

**MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT OF ACQUITTAL**

**I. Statement of Facts**

In June 2022, Ms. Ebony Craig reported an inappropriate **conversation** to the Gibraltar Police Department involving her minor daughter, MV and an adult, Mr. Ninsawat, on Social Media sites Snapchat and Instagram. Ms. Craig testified to observing sexual communications but not images.

Gibraltar Police Detective Bruce Bullard testified he began an investigation into the online communications. Bullard performed a forensic evaluation of MV's iPhone and served several subpoenas on Meta, Instagram, etc. Bullard observed messages that were in

"vanishing" or "disappearing" mode. Bullard found no images of MV nor any electronic data containing visual depictions or images. The matter was referred to HSI.

HSI Special Agent David Alley sent summonses, subpoenas and executed search warrants, including searching Ninsawat's 17 electronic devices, but located no illicit images of MV nor any child pornography. Mr. Ninsawat, in a statement to Alley, admitted "asking" for and receiving images of a sexual nature. Agent Alley also read portions of the Instagram conversation screens where Ninsawat asked for photos.

Meta Platforms, Inc. representative Tyler Harmon confirmed "disappearing messages" in vanish mode permanently disappear when closing the application and exist nowhere. Thus, they cannot be shared or distributed. Meta employs servers throughout the country and did not testify the transmissions between Michigan residents would have traveled between the states.

Lastly, MV1 testified to initiating the online discussions during this three-week period. She testified she loved Defendant and the two had an online relationship. She would often masturbate and call

Defendant to participate. While already engaged in sexual activity, she testified to several instances of Defendant asking for an image. She asked Defendant if she could move into his home and he assured her she could. On Instagram, there were no chat screens where Defendant offered her gifts, presents, money or other inducements.

## II. Law and Argument

### A. The Government has not shown Defendant employed, used, persuaded, induced, enticed, or coerced MV to engage in sexual activity to produce a visual depiction as she was already predisposed and engaged in such activity.

Indictment counts 1, 2, 4, 5, 6 and 7 charge Defendant with using, persuading, coercing etc. MV1 to engage in "sexually explicit conduct for the purpose of producing a visual depiction of such conduct."

The words Congress uses in 2251(a) and 2422(b) have meanings; "Merely asking a minor for a naked photo, does not constitute persuasion under §2251(a)." *United States v. Streett*, 83 F.4th 842, 853 (10th Cir. 2023). Rather, there must be a "calculated action" that involves "pressuring the child, physically or psychologically, to engage in explicit conduct." *Id. citing United States v. Heinrich*, 57 F.4th 154, 159 (3d Cir. 2023). In other words, "the defendant must overcome some resistance on

the part of the minor." *Streett, supra.*

At trial, the Government has shown the following requests relative to images and any possible "enticements":

## Exhibit 9.4 (BN 0777)

"Would you want to be with someone already have a house and cars and can support you or be with someone with no house or car tho" and "I'm trying here (frown face emoji) but it's all good if you don't want me anymore."

## Exhibit 9.5 (BN 0781)

MV1 says, "I don't wanna send those explicit photos anymore" (this is referencing their time on Snapchat). Defendant responds, "Okay that's fine."

## Exhibit 9.8 (BN 0790)

"Hey baby, I just got done at the gym I know you said no more pics but I miss seeing it (frown face emoji) you don't have to send it but it's would be a nice surprise if you did"

## Exhibit 9.19 (BN 0815)

"And yeah save, because your mom is controlling and without her you would be free to do anything or go anywhere."

## Exhibit 9.33 (BN 0854)

"Well, I did that so I can look at them later and I didn't have to ask you so much"

## Exhibit 9.34 (BN 0877)

"Yeah, life is pretty simple and easy (smiling face emoji) I try to live

a stress free life (smiling face emoji) but I get lonely sometimes so I'm glad we are talking" MV1 responds, "I'm glad we are talking too"

## Exhibit 9.36 (BN 0933)

"Let me see your pussy real quick baby"

## Exhibit 9.37 (BN 0939)

"I guess I won't ask for anymore pics. I'm literally talking to someone, and I barely know what they look like."

## Exhibit 9.40 (BN 1007)

"Can I see?"

## Exhibit 9.42 (BN 1049)

"When you do don't forget to think about me baby" and "I wanna see your finger go inside your pussy."

## Exhibit 9.46 (BN 1056)

"Are you gonna send me your pussy?"

## Exhibit 9.48 (BN 1069)

"Baby I wanna watch you play with your pussy so bad bb."

## Exhibit 9.50 (BN 1109)

MV1 says, "I'm bored." Defendant responds, "You can play with your pussy and send me a video baby."

## Exhibit 9.52 (BN 1167)

"I would be so happy if you surprise me with you fingering your

pussy video (smiling face emoji). MV1 responds, "Maybe I will"

## Exhibit 9.53 (BN 1180)

"Once you turn 16, would you let me eat your pussy."

## Exhibit 9.57 (BN 1222)

MV1, "Yes Imma take a bath later tonight" Defendant responds, "Could you please take some pictures for me while you're in there baby? (heart emoji, smiling face emoji)" MV1, "Maybe."

## Exhibit 9.59 (BN 1230)

"Are you gonna send me pictures and videos baby? (heart emoji, smiling face emoji)"

## Exhibit 9.60 (BN 1246)

"Now be a good girl and show me your pussy and let me see you stick your fingers inside."

## Exhibit 9.61 (BN 1249)

"Spread your pussy for me baby I wanna your tight pussy." MV1, "I can't darling im in the middle of something"

## Exhibit 9.71 (BN 1558)

"Baby, when are you go something...see your pussy again?"

## Exhibit 9.80 (BN 0980)

"No, I just said I won't ask for them anymore."

## Exhibit 9.83 (BN 0943) June 7 argument before June 8 Count 1

"This whole entire time we been talking I've never cuss at you. And

I find it very disrespectful when you do. And I never said I was mad. I just said I won't ask for them anymore. And I wasn't trying to argue if you didn't want to talk to me or talk to me at a later time..we have a lot for waiting to do. I still want you but I'm not gonna make you do anything you don't want to do. If we get together, I was already planning on the future what we should do. That's definitely not abandoning you. I'm 31 ain't playing around. The next girl I end up with gonna be for real"

## Exhibit 9.87 (BN 0947) June 7 argument before June 8 Count 1

MV admits to "egging" him on.

## Exhibit 9.92 (BN 0952) June 7 argument before June 8 Count 1

"...I'm literally just chillin, I said I won't ask you for pics anymore."

## Exhibit 9.100 (BN 1501)

"Is your pussy still bleeding baby? I wanna see it so bad. Can't you just wipe it off and then take a pic? (smiling face emoji)"

Nowhere is Ninsawat using persuasion, inducement, or enticement. Ninsawat never tries to convince MV1. He is always asking and tells her she doesn't have to do it if she doesn't want to. Asking a minor for an image is insufficient. *Streett, supra.* Here, MV1 was predisposed to engage in, and often was already engaged in sexual conduct. Where and when she expresses a desire to not do it at a particular point in time, she says so; things like, "I can't darling im in the middle of sumthing." And in those instances, Ninsawat says "ok" or that's fine. As to the specific

11

dates listed in the Indictment:

**(1)   Count 1, 2, 3; June 8, 2022**

The first Instagram communication, at 12:23 p.m., unsolicited, was MV sent a "disappearing message." Defendant, not privy to the conduct, asks if she had been "playing with it?" She says "Yeah." Later, MV sends several more unsolicited "disappearing messages" while again engaged in such conduct. The same scenario is presented when Defendant asks, "Can I see?" and MV sends the charged message while she is already engaged in such conduct.

**(2)   Count 4, 5 attempts: June 9, 2022**

Similarly, MV initiates communications at 9:54 a.m. Defendant doesn't reply until 10:37 a.m. when MV initiates sexual talk; "you like playing rough?" and "do you have a really dirty fantasy?" to which he replies, "I haven't really thought about it." The attempt is where Defendant asks, "Are you going to send me your pussy?" However, in context, the parties are discussing the future and future events; Defendant even states "I'm excited for the future." In context, MV was not participating, and it is clear an attempt is not shown.

**(3)   Counts 6,7,8; June 20, 2022**

12

Government exhibits 9.75 through 9.78 show MV again demanding "I want to talk on the phone right now" and requested Defendant send her a "dick pic." Again, Defendant complies. MV testified she was masturbating, stating "more", "good," "yeah," etc. Granted, this is not your garden variety sexual exploitation case, as the facts show MV1 initiated contact, directed Defendant what to do and was already engaged such that no coercion or persuasion was necessary nor employed.

Coercion is defined as "persuading someone to do something by using force or threats." *Oxford Languages*. The Government has only shown screenshots where Defendant asked without promising anything in return. In this case, in the best light to the Government, the screen shots show MV was an advanced and sexualized teenager, familiar with sexual terms, slangs and conversation and was, on her own, already engaged in that activity. Often, she initiated conversations and sought images from Ninsawat, i.e. asking for "dick pics." Mostly, MV sent unsolicited messages. Even in the "best light," Ninsawat did not coerce, persuade, or entice MV.

**B. The Government has not shown, as alleged in Indictment, counts 1, 2, 4, 5, 6 and 7, that Ninsawat employed MV1 "to engage in sexually explicit conduct for the purpose of producing a visual depiction."**

13

The Indictment alleges Ninsawat sought to engage MV1 in sexually explicit conduct for the purpose of producing a visual depiction. This requires that Defendant "acted with the intent to create visual depictions of sexually explicit conduct." *United States v. Frei*, 995 F.3rd 561, 565 (6th Cir. 2021). Here, as stated, MV1 was already involved and predisposed to engage in such activity, and in fact was, thus Defendant did not "engage" her in sexually explicit conduct but simply did as he was requested and instructed by MV1.

While the evidence shows Defendant asked, there is no evidence Defendant employed MV1 as, again, she *was already engaged in such conduct*. While difficult and embarrassing, MV-1 appears from the chats to have been at home masturbating quite often in the two weeks at issue and Ninsawat did not need to engage her in sexually explicit conduct.

## C. The Government has not shown Indictment counts 3 and 8 which require transmission of "child pornography" as no visual depictions were produced.

Section 2251(a) requires the Government show Defendant produced a visual depiction. *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021); *United States v. Lively*, 852 F.3d 549, 565 (6th Cir.),

*cert denied* 138 S. Ct. 366 (2017). Section 2252A(a)(2) require receipt of images "that contained child pornography" meaning a "visual depiction" of a minor in sexually explicit conduct.

What sets § 2251(a) and 2252A(a)(2) apart from related statutes is that they prohibit the *production* and *transmission* of a depiction of a child engaging in sexually explicit conduct. *United States v. Skinner*, 70 F.4th 219, 226 (4th Cir. 2023) citing *United States v. Palomino-Coronado*, 805 F.3d 127, 132–33 (4th Cir. 2015). Sexually explicit conduct alone is not enough; there must be a visual depiction that is produced or transmitted. *Id.* That conduct is "the harm or evil the law seeks to prevent." *Id. quoting United States v. Elbaz*, 52 F.4th 593, 603 (4th Cir. 2022).

The legislative history of §2251(a) confirms that this is the statute's focus. Congress has explained that §2251(a) and related statutes protect children from coerced sexual activity and the continuing harm they suffer when depictions of that sexual activity are distributed, via internet or otherwise. *Skinner, supra.* The Senate Judiciary Committee Report on the Protection of Children Against Sexual Exploitation Act of 1977, which first introduced the

offense for producing child pornography, stated "the use of children as prostitutes or as the subjects of pornographic materials is very harmful to both the children and the society as a whole." S. Rep. No. 95-438, at 5 (1977).

In this case, Instagrams "disappearing message" technology which the parties intentionally use is intended that messages would immediately and permanently vanish, and never be transferrable. Here, searches of MV1's iPhone and Defendant's 17 devices yielded no visual depictions. Thus, even if the parties "referred to depictions," the proofs are insufficient under 2251(a) as there are no visual depictions that could "find their way" into interstate commerce under 2251(a). It is an impossibility.

This essential element cannot be "assumed" or presumed" by the jury. As no visual depictions were produced such that the jury may see and determine if the "messages" were in fact what they purport to be, i.e **who** they purport to be of, **when**, that is the date the messaged "images" were created, by whom, **whether** pornographic or are just suggestive, and thus actually contained CP cannot be determined.

Thus, the Court should grant the Rule 29 motion.

### III. Conclusion

WHEREFORE for these reasons set forth above, pursuant to F. R. Crim. P., the Motion for Judgment of Acquittal should be granted in its entirety, and the Indictment be dismissed.

Respectfully submitted,

Jonathan M. Epstein
Christopher J. Coyle
Attorneys for Defendant
30445 Northwestern
Hwy, Ste 225
Farmington Hills,
MI 48334
Phone: 248-219-4004
jonathan@jonathanmepstein.com

Dated: November 27, 2023